[Cite as *State v. Hollingsworth*, 2019-Ohio-3764.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,              :

                                      No. 107808

    v.                               :

QUINCY HOLLINGSWORTH,                     :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** CONVICTION REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 19, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-627190-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Gregory J. Ochocki, Assistant Prosecuting
Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and
Noelle A. Powell, Assistant Public Defender, *for appellant.*

LARRY A. JONES, SR., P.J.:

{¶ 1} Defendant-appellant Quincy Hollingsworth ("Hollingsworth") appeals his misdemeanor child endangering conviction, which was rendered after a jury trial. For the reasons that follow, we reverse Hollingsworth's conviction.

{¶ 2} The record before us shows that in April 2018, Hollingsworth was charged with one count each of domestic violence, a felony of the fourth degree, and endangering children, a misdemeanor of the first degree. The charges resulted from a March 2018 incident in Hollingsworth's home. It was the state's position that Hollingsworth committed an act of domestic violence against his 12-year-old son, and endangered the son by failing to prevent, and intervene in, a fight between the 12-year-old son and the son's 15-year-old brother.

{¶ 3} The case proceeded to a jury trial. After its deliberations, the jury returned a verdict of not guilty on the domestic violence and guilty on the endangering children count.

{¶ 4} The trial testimony established that Hollingsworth has four sons who, at the relevant time, were approximately 15, 12, 10, and 7 years of age. All four boys lived with Hollingsworth and his wife. The youngest of the children who lived in the house is the child of Hollingsworth and his wife; the other three boys are from another relationship Hollingsworth had, and he had residential custody of them and their mother had weekend visitation with them, from Friday after school to Sunday afternoons.

{¶ 5} As mentioned, the 12-year-old boy was the subject victim of the charges. The record shows that he had Attention Deficit and Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD") and because of the disorders, had a history of behavioral problems, including being physically and verbally abusive. He was prone to get easily agitated and have "outbursts"; he was on

medication, and the family had been counseled in several ways to help calm him down when he was agitated. The record also shows that the oldest boy (the 15-year old) had his own room in the house, and the other three boys shared a bedroom.

{¶ 6} The incident occurred on a Thursday. By all accounts, at the time leading up to the incident, the whole family — Hollingsworth, his wife, and the four boys — were all in the living room together. The T.V. was on, and the boys were playing on their tablets. The accounts about what exactly ensued are divergent.

{¶ 7} The victim testified that the youngest of the boys, his stepbrother, made a comment about him (the victim) leaving for weekend visitation with his mother and this made the victim upset because he thought the stepbrother did not care about him. In response, the victim called his stepbrother a "brat." The victim's stepmother then took the victim into the kitchen to try to calm him down. The victim testified that he did not calm down, however; rather, he told his stepmother to leave him alone and then "stormed off upstairs."

{¶ 8} Hollingsworth called the victim back downstairs. The victim went downstairs, where his 15-year-old brother talked to him and tried to calm him down. The victim testified that he got even more upset, however, and "stormed back upstairs." Hollingsworth called for the victim to come back downstairs, but the victim ignored him. Hollingsworth then began counting, which the victim knew that if his father reached a certain number and he was not listening, he would be punished. The victim continued to ignore Hollingsworth, which led to Hollingsworth going upstairs.

{¶ 9} The victim testified that when Hollingsworth got upstairs, he (Hollingsworth) hit him numerous times, first close to his stomach, and then close to his face. The victim testified that the hits hurt and he was screaming. When he finished, Hollingsworth told the victim to go downstairs, which he did.

{¶ 10} Once downstairs, the victim went into the kitchen; everyone else was initially in the living room, but shortly thereafter his 15-year-old brother came into the kitchen, the two started arguing, and then it got physical, with the two punching each other. The victim testified that his brother eventually threw him to the floor. He denied that his brother ever hit him in the head. The victim swore at his brother, and their stepmother then came into the kitchen and broke up the fight, which was brief. The victim testified that that was the end of the physical altercations, he was grounded, and sent to his room.

{¶ 11} The following day, a Friday, the victim went to school and to his knowledge he did not have any visible marks on him. In the afternoon, his mother came to get him and his ten-year-old brother; the 15-year-old brother did not go with them.

{¶ 12} During the car ride to the victim's mother's house, his mother noticed that he had marks on him and she took him to the hospital. The victim testified that he did not feel hurt and he could not remember if he told his mother about the incident. At the hospital, the victim talked to a nurse and the police. He also talked about the incident to a social worker who came to his mother's house. Since the

incident, up until the time of trial, the victim and his ten-year-old brother began residing with their mother.

{¶ 13} On cross-examination, the victim testified that just before he "stormed off upstairs" the first time, his father had been on the telephone with his mother. But according to the victim, at the time he and his brother were fighting, his father was on the couch in the living room watching T.V.

{¶ 14} The ten-year-old brother gave his account. He corroborated that his father, in general, used corporal punishment on the children. In regard to the incident, he testified that the stepbrother told the victim that he wished the victim would go live with his mother, which made the victim mad. The victim went into the kitchen, and Hollingsworth told the 15-year-old son, "go deal with it your way." Hollingsworth was laughing according to the brother. The oldest brother threw the victim into the dining room. The victim then went upstairs; the ten-year-old brother initially testified that the victim did not have a shirt on because the house was warm. Hollingsworth followed the victim upstairs and "beat" him. When Hollingsworth brought the victim back downstairs, the victim had marks on his chest and stomach.

{¶ 15} According to the ten-year-old brother, the victim "was barely able to breathe," and had trouble breathing for approximately four-and-a-half hours, because Hollingsworth had "hit him very hard in the chest and his stomach," although he admitted he had not been upstairs. The brother also testified that Hollingsworth "dog walked" the victim down the stairs. He explained that "dog walking" meant Hollingsworth dragged the victim by the back of his shirt.

**{¶ 16}** The following exchange took place on direct-examination in regard to the brother's inconsistent testimony as to whether the victim had a shirt on:

[State]:  Now going back to that incident, you said [the victim] didn't have a shirt on?

[Brother]:  No, because it was very warm in the house.

[State]: So before [the victim and the 15-year-old brother] even got into a fight, did he have a shirt on?

[Brother]:  No.

[State]:  Okay, but then you say that [Hollingsworth] dog walked [the victim] down the stairs.

[Brother]:  Yeah.

[State]:  How was he holding him?

[Brother]:  By the back of his shirt, and like his hands were not able to touch the steps.

[State]:  Okay, but if he didn't have a shirt on for part of that, when did he get his shirt back on?

[Brother]:  Wait, oh yeah, when he went upstairs, he grabbed his shirt to defend himself I believe and, wait, no.  At that time he had a shirt on. No – oh, yeah, he had a shirt on when he was upstairs.  Well, when he was downstairs, he did not have a shirt on and like —.

[Trial court]:  If you don't remember, that's okay.

[Brother]:  Yeah.  I don't remember now.  I'm confused.

[State]:  Do you remember seeing marks on [the victim's] stomach?

[Brother]:  Yeah.

[State]:  Okay, and is that when you remember he didn't have a shirt on?

[Brother]: Yeah. Now I remember. He had a shirt on the entire time, and I know he had no marks from the beginning because the day before he had no marks because he was not wearing a shirt because it was very warm in the house, and then the next day he was wearing a shirt and then he went upstairs and [Hollingsworth] started beating him. Then when we went to bed, he took off his shirt and I [saw] all the marks.

{¶ 17} The ten-year-old brother testified that when their mother came to get them the next day after school, they ate dinner and then he told her about Hollingsworth beating the victim, and that the victim had, and was still having, trouble breathing; the mother then took the victim to the hospital.

{¶ 18} The ten-year-old brother further testified that fights between the victim and the older brother were common occurrences and that Hollingsworth and his wife would usually just let them run their course — they would just stop on their own without interference from anyone. The brother testified that he preferred living with his mother over living with Hollingsworth.

{¶ 19} The victim's mother also testified. She explained that she agreed to the parenting plan that existed between herself and Hollingsworth, but she was not happy about it; she agreed to it because she felt her lawyer was "outlawyered" by Hollingsworth's lawyer. One of the concerns she had about the boys being with Hollingsworth was that, according to her, he was "a drinker." The mother also testified that she did not get along well with Hollingsworth or his wife, so she kept her contact with them to a minimum.

{¶ 20} Relevant to this incident, the mother testified that, at the time, she had a strained relationship with the 15-year-old son, and so when she went to

Hollingsworth's house on the subject Friday to get the boys, the oldest son did not come with her. When she got the other two boys, she noticed the victim had a bruise on his face, and the victim told her what had happened. The mother and her boyfriend, who was with her, decided that they should take the victim to the hospital to document the injury. The mother testified that because she knew that emergency room visits can be long and exhausting, she decided to take the boys to get something to eat first. She denied telling the victim what to say to the hospital personnel or police.

{¶ 21} On Sunday, the mother received a voicemail message from the oldest brother, telling her, in a profane manner, to return the two brothers to Hollingsworth's house. The mother testified that she was "stunned" by the message because she had never heard that son talk like that before, and she felt threatened. She did not return the victim and the ten-year-old to Hollingsworth.

{¶ 22} The mother testified that about ten days after she had the victim and his ten-year-old brother, she was contacted by the children services agency and told that she had to return them to Hollingsworth, which prompted her to get a protection order; the order included the oldest son.

{¶ 23} On cross-examination, the mother testified that shortly after the incident, she filed a motion for a change of custody of the boys, seeking that she be granted custody. The juvenile court stayed hearing the motion, pending the outcome of this case.

{¶ 24} The 15-year-old testified as well. According to him, when the family was together in the living room at Hollingsworth's house on the day of the incident, the victim started complaining about wanting his own room, and either Hollingsworth or his wife told the victim that he needed to do some things — like chores, listening better — for them to consider letting him have his own room. This upset the victim, who then started yelling in general and specifically profanely at him; the victim went and sat on the steps. Hollingsworth's wife tried to calm the victim down.

{¶ 25} Meanwhile, Hollingsworth stayed with him and the other boys to make sure that they did not intervene and make the situation worse. Hollingsworth's wife was able to get the victim calmed down, and she returned to the living room.

{¶ 26} The 15-year-old then went into the kitchen, not realizing that was where the victim was. The two walked past each other, and as they did so, the victim intentionally pushed or bumped into him, so he pushed the victim back. The two then engaged in a physical altercation, and he grabbed the victim by the arms and the two fell to the floor. When they fell, the victim hit his head on the floor. The 15-year-old testified that "almost immediately" after they hit the ground either Hollingsworth or his wife came to where they were and had the victim go to his room; Hollingsworth went upstairs with the victim. The oldest brother heard Hollingsworth talking to the victim, trying to get him to calm down. Shortly after the victim had calmed down, Hollingsworth came back downstairs and everything

"seemed to be fine." Approximately 20 minutes later, the victim came back downstairs; he did not really talk much, but he appeared okay and there were no more altercations.

{¶ 27} The next day, the mother came to get the victim and ten-year-old brother.[1] He testified that he was unaware of any problem until Sunday, when his two brothers did not come back to Hollingsworth's house from their weekend visit with their mother like they normally did. The oldest brother initially denied calling the mother and leaving her a threatening voicemail message. He was forced to concede that he did when the state produced the message, which was played for the jury. He testified that he was worried about his brothers and called his mother to inquire about them. He denied that Hollingsworth told him to make the call to his mother. He also denied that Hollingsworth hits him or his brothers.

{¶ 28} The treating nurse testified that the victim reported that he gets hit by his dad and brother. The victim told the nurse that on the day of the incident, Hollingsworth was on the phone with the victim's mother, and Hollingsworth's wife tried giving the victim a "pep talk." The victim was upset and did not want to talk to her so he went upstairs. He came back downstairs and got into a verbal altercation with his 15-year-old brother, so he went back upstairs. Hollingsworth then came upstairs and hit him. The victim eventually went back downstairs, where he and the 15-year-old brother got into an altercation in the kitchen. The nurse observed

---

[1]The oldest brother testified that he did not go with the mother that day and that he usually did not go with her for weekend visitations because he did not like being with her.

bruising under the victim's right eye and upper right side of his forehead by his hairline.

{¶ 29} Hollingsworth presented the testimony of his wife. She testified that the altercation between the victim and the oldest son lasted approximately 30 seconds to one minute, and as soon as Hollingsworth heard them hit the floor, he immediately got up. He had been on the phone with the boys' mother. According to the wife, as the commotion was occurring, Hollingsworth was yelling at them to stop. After the altercation, the victim ran upstairs and Hollingsworth followed him.

{¶ 30} Hollingsworth and the victim were upstairs for approximately three minutes; the wife testified that she did not hear any noises coming from upstairs. The victim came back downstairs, and Hollingsworth's wife tried to calm him down so that there would not be another altercation with the 15-year-old. The victim then went to bed. Hollingsworth's wife testified that she believed he had his shirt off (that was his usual practice) and she did not observe any injuries to him that night or the next morning.

{¶ 31} Hollingsworth's wife testified that Hollingsworth spanks the children, but she has never seen him slap them. He told her that he spanked the victim on the day in question, but she testified that see did not see or hear it.

{¶ 32} Hollingsworth also testified. He was on the phone with the boys' mother, and he heard a loud bang, so he ended the call. The victim ran past him, went upstairs, and Hollingsworth followed. The victim swore at Hollingsworth, and Hollingsworth "swatted him on his rear end." He denied "beating" him on his

stomach and chest. He has never had to take the victim to the hospital for injuries sustained in the home.

{¶ 33} Hollingsworth testified that the victim and his 15-year-old brother have had verbal altercations in the past, and have also gotten physical with each other, but never to the extent as what occurred on the day in question. Hollingsworth denied telling the oldest brother to do something to the victim. He also denied telling or encouraging his oldest son to call his mother and leave a profane message.

{¶ 34} On this evidence, the jury returned a verdict of not guilty on the domestic violence count and a verdict of guilty on the endangering children count. The state's theory on the endangering count was that Hollingsworth was not properly supervising the boys and allowed the fight to escalate to the point that the victim got hurt.

{¶ 35} In this appeal, Hollingsworth raises two assignments of error for our review:

I.    There is insufficient evidence to support Hollingsworth's conviction for child endangering.

II.   The jury's verdict finding Hollingsworth guilty of child endangering is not supported by the manifest weight of the evidence and his conviction of [that offense] violates his rights to [a] fair trial and due process as protected by the constitutions of the United States and of the state of Ohio.

Sufficiency of the Evidence

{¶ 36} In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 37} Hollingsworth was indicted under R.C. 2919.22(A), which provides in relevant part that,

> No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

{¶ 38} Proof of recklessness is also required for an endangering children conviction. *State v. McGee*, 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus ("The existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(A)."). A "[s]ubstantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

*Id.*

**{¶ 39}** Thus, to support a conviction for child endangering under R.C. 2919.22(A), it must be established, beyond a reasonable doubt, that Hollingsworth (1) recklessly (2) created a substantial risk to the health or safety of his 12-year-old son (3) by violating a duty of care, protection, or support.

**{¶ 40}** As mentioned, the state's theory on the endangering count was that Hollingsworth did not properly supervise his 12- and 15-year-old sons and allowed the fight to escalate to the point that his 12-year-old son got hurt. We disagree.

**{¶ 41}** The evidence here shows that the 12-year-old victim had ADHD and ODD, and, because of these disorders, was known to act out physically and verbally, got into a brief physical altercation with his 15-year-old brother (the physical altercation was approximately 30 seconds, and at most, the entire incident lasted a minute-and-a-half). The record demonstrates that the family — especially Hollingsworth, his wife, the victim's mother, and the 15-year-old — employed various calming techniques when the victim would get agitated. In fact, according to the victim, the 15-year-old brother initially tried to calm him down after he "stormed off upstairs" when his stepbrother upset him.

**{¶ 42}** The victim testified that the physical altercation took place after he victim "stormed off" a second time and was made to come back downstairs, where he went into the kitchen and his 15-year-old brother followed. The victim testified that his stepmother broke the fight up, he was grounded, and he went to bed. The following day, he went to school without incident and, to his knowledge, did not have

any visible marks on his body. He testified that he did not feel hurt and could not remember if he even told his mother about the incident.

{¶ 43} Although, the 10-year-old brother testified that Hollingsworth told the 15-year-old to "go deal with [the victim] your way," and that fights between the 15-year-old and victim were common occurrences, the "deal with it" comment is not, without more, sufficient evidence that Hollingsworth recklessly created a substantial risk to the health or safety of his 12-year-old son, because the record also demonstrates that the 15-year-old son would help to calm down the victim. Thus, "deal with it" could have meant "try to calm him down," as according to the victim's own testimony, his brother had just moments before tried to do.[2] Moreover, there was no testimony that the 15-year-old brother or the victim heard Hollingsworth tell him to "deal with it." Therefore, Hollingsworth's comment could not have been the cause of the altercation with the 15-year-old brother.

{¶ 44} Further, although there are disputes as to whether Hollingsworth was on the phone at the time the altercation broke out, by all accounts, the altercation was brief and either Hollingsworth or his wife intervened. The evidence is insufficient to show that Hollingsworth "instigated a physical altercation between two of his minor sons, then sat back on the couch and allowed the older son to pummel the younger son for thirty seconds in the next room" as the state contends.

---

[2] *Compare State v. Dayton*, 3d Dist. Union No. 14-17-03, 2018-Ohio-3003, where one of the victim children testified that the codefendant would tell the children to "go into the bathroom and sort it out * * * and by sort it out she meant * * * hit and punch and stuff * * *." *Id.* at ¶ 22.

Rather, the record before us shows a brief physical altercation between two brothers, which was not uncommon to them, and is not uncommon in many households.

{¶ 45} In light of the above, we find the first assignment of error well taken and dispositive of this appeal. The second assignment of error is moot.

{¶ 46} Conviction reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR